IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **QUEVEDO RIVERA, DERIX ANTONIO**, <br> *Petitioner*, <br><br> v. <br><br> **JAMISON, J.L., in his official capacity as Warden, Federal Detention Center, Philadelphia; JOHN RIFE, in his official capacity as the Field Office Director, Immigration and Customs Enforcement, Enforcement and Removal Operations, Philadelphia Field Office; TODD LYONS, in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; PAMELA BONDI, in her official capacity as U.S. Attorney General**, <br> *Respondents*. | **Civil No. 26-1653** |

**MEMORANDUM**

**Costello, J.**                                                    **March 19, 2026**

Petitioner Derix Antonio Quevedo Rivera is a national and citizen of Guatemala.

Quevedo Rivera entered the United States without inspection in October 2024.  On March 10,

2026, while Quevedo Rivera was on his way to work, Immigration and Customs Enforcement

("ICE") detained him under 8 U.S.C. § 1225(b)(2), a provision of the Immigration and

Nationality Act ("INA") which generally does not permit release on bond.  While detained at the

Federal Detention Center ("FDC") in Philadelphia, Pennsylvania, Quevedo Rivera filed a

Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, arguing that his mandatory detention

without bond is unlawful.  The Government opposed the Petition.  Because § 1225 does not

apply to noncitizens, like Quevedo Rivera, who have resided in the United States since entering the country, the Court will grant the Petition.

## I.      FACTUAL BACKGROUND[1]

Quevedo Rivera entered the country in October 2024.  ECF No. 1 ¶ 2.  After his entry into the United States, Quevedo Rivera resided in Philadelphia.  *Id.* ¶ 2.  On March 10, 2026, plainclothes immigration officials detained Quevedo Rivera at a gas station while he was on his way to work.  *Id.* ¶ 3.  He remains detained at FDC Philadelphia.  *Id.*  Prior to being detailed by ICE, he had no contact with immigration officials.  *Id.* ¶¶ 2-3.

## II.     LEGAL STANDARD

A writ of habeas corpus is available "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A district court may grant a writ of habeas corpus if a petitioner is detained "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  This includes a noncitizen's challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citation and quotations omitted)).

---

[1] The Government does not dispute the facts in this case.  *See generally* ECF No. 4.  The Court will therefore decide this matter on the pleadings and without a hearing.

III.    **LEGAL BACKGROUND**

A.    **INA Detention Provisions**

At issue in this matter are two provisions of the INA that permit detention of noncitizens during immigration removal proceedings. Section 1226 of the INA provides that the Attorney General may arrest and detain noncitizens subject to a few statutory exceptions. 8 U.S.C. § 1226(a). A noncitizen may request a bond hearing before an immigration judge, who may release the noncitizen upon finding that he "poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); 8 C.F.R. § 1236.1(c)(8). For decades, noncitizens like Quevedo Rivera who entered the United States and resided in the country prior to their removal proceedings were detained under this section of the INA.

Prior to Quevedo Rivera's arrest, the Department of Homeland Security ("DHS") changed course and began detaining noncitizens under § 1225 of the INA, which applies to "applicant[s] for admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Historically, this provision applied only to individuals actively seeking to enter the country at a border or port of entry—not individuals already residing in the United States. *Kashranov v. Jamison*, 25cv5555, 2025 WL 3188399, at *6-7 (E.D. Pa. Nov. 14, 2025). In July 2025, DHS issued a policy directing ICE agents to consider anyone who entered the United States without admission or inspection as an "applicant for admission" regardless of how long they have already been present in the country. *Salinas Jaigua v. Jamison*, 25cv7115, 2025 WL 3757076, at *2 (E.D. Pa. Dec. 29, 2025).

Individuals detained under this provision are subject to mandatory detention pending the disposition of their removal proceedings. 8 U.S.C. § 1225(b)(2)(A). They are generally not afforded an opportunity for a bond hearing and "may be released only 'for urgent humanitarian

reasons or significant public benefit.'" *Kashranov*, 2025 WL 3188399, at *1 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018)).

The Board of Immigration Appeals ("BIA") subsequently issued a decision endorsing DHS's new interpretation of § 1225 and ruling that all noncitizens who entered the United States without admission or inspection, including those who have been residing in the United States without lawful status, are subject to mandatory detention without bond. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

### B.    Quevedo Rivera's Petition & the Government's Response

In March 2026, ICE detained Quevedo Rivera under § 1225 pursuant to the application of this new policy. Quevedo Rivera argues that § 1225 does not apply to him because he is not actively "seeking admission" to the United States. ECF No. 1 ¶¶ 34-55. Rather, he entered without inspection and has been living in the United States for over a year. *Id.* ¶¶ 2, 28-30. He therefore contends that his detention is governed by § 1226, which confers the right to a bond hearing. *Id.* ¶¶ 34-55. He also argues that his mandatory detention without the right to a bond hearing violates his constitutional due process rights.[2] *Id.* ¶¶ 56-59. Quevedo Rivera asks the Court to declare his detention under § 1225 unlawful and order his immediate release. *Id.* at 21-22.

The Government raises two arguments in opposition to the Petition. First, that § 1225 of the INA applies to Quevedo Rivera, not § 1226, and his mandatory detention is lawful under that provision. ECF No. 4 at 4-7. Second, that Quevedo Rivera's detention without a bond hearing

---

[2] Rivera's Petition also asserts that his continued detention violates the Administrative Procedure Act. *Id.* at ¶¶ 76-80. Because the Court concludes that Rivera is entitled to relief under the INA and the Due Process Clause, it declines to reach this argument.

does not offend due process.  *Id.* at 7-8.  As courts in this District and across the country have repeatedly held in hundreds of recent cases, these arguments are unavailing.

## IV.     DISCUSSION

### A.     Section 1225 Does Not Apply to Quevedo Rivera

The disposition of this case depends on whether § 1225 or § 1226 applies to noncitizens like Quevedo Rivera, who have resided in the United States for years.  The Court finds that § 1226—and not § 1225—applies here.

In resolving issues of statutory interpretation, the inquiry begins with the text, and "proceed[s] from the understanding that '[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.'"  *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (quoting *BP America Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006)).  A "word must not be read in isolation but instead defined by reference to its statutory context."  *U.S. v. Husmann*, 765 F.3d 169, 173 (3d Cir. 2014) (internal citations omitted).

Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  It states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending removal hearings.  8 U.S.C. § 1225(b)(2)(A).  By its terms, this section applies to a noncitizen who is both "an applicant for admission" and "seeking admission."

An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of

5

arrival . . .)[.]"  8 U.S.C. § 1225(a)(1).  The statute also defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).

The INA does not define the phrase "an alien seeking admission."  Courts in this District have construed this language to mean "*actively* trying to acquire or gain 'lawful entry . . . after inspection and authorization by an immigration officer.'"  *Kashranov*, 2025 WL 3188399, at *6 (internal quotations omitted).  The Court agrees with this interpretation of the statute for several reasons.

First, the plain text supports this reading.  The present participle "seek*ing*" connotes "ongoing and continuous action."  *Id.*  "Seeking admission" therefore means taking ongoing, affirmative steps to enter the United States, typically at a border or port of entry by presenting oneself for inspection and authorization.  *Id.*  Second, the statutory context of § 1225(a) confirms it governs "inspections and detentions" of noncitizens at the border.  *Id.* at *7.  As Judge Wolson has explained in detail, various provisions of § 1225(b) refer to "inspection" of noncitizens and the treatment of noncitizens "arriving from contiguous territory."  *Id.* (internal quotations omitted).  These references confirm that mandatory detention under § 1225(a) applies to individuals detained "at or immediately following border crossing."  *Id.*

Basic principles of statutory construction lend further support to this interpretation.  Congress used two distinct terms when drafting the INA— "seeking admission" and "applicant for admission."  If the Court were to accept the Government's position that these terms are interchangeable, one phrase would be rendered "entirely meaningless."  *Id.* (citing *Pulsifer v. United States*, 601 U.S. 124, 143 (2024) (explaining cannon against surplusage)).

6

Quevedo Rivera is not taking active steps to obtain entry into the United States. He entered the United States in October 2024 and has lived here ever since. ECF No. 1 ¶¶ 2, 28-30. Section 1225 therefore does not apply to him.

The Government notes that a divided Fifth Circuit panel found the Government's interpretation of § 1225 to be correct. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026). The majority reasoned that the terms "applicant for admission" and "seeking admission" have the same meaning. *Id*. at 502-03. This opinion is not binding authority. Moreover, for the reasons stated above, the Court does not find the reasoning of this opinion persuasive.

Quevedo Rivera's detention is governed by § 1226 because he is a "[noncitizen] already present in the United States." *Jennings*, 583 U.S. at 303. Section 1226, titled "Apprehension and detention of aliens," provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States[.]" 8 U.S.C. § 1226(a). Except under very limited circumstances, noncitizens detained under this section are entitled to a bond hearing and an opportunity for release pending the outcome of immigration proceedings. *See* 8 C.F.R. §§ 1003.19(a), 1236.1(d). Because § 1226 applies, Quevedo Rivera's mandatory detention under § 1225 is unlawful.

### B.    Due Process

The Government next argues that Quevedo Rivera's mandatory detention pending the resolution of his removal proceedings does not offend due process. ECF No. 4 at 7-8. The Court disagrees.

"It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523 (internal quotations omitted). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, which weighs (1) "the private interest that will be affected by the

official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. 319, 335 (1976).

Each *Mathews* factor weighs in favor of Quevedo Rivera.  First, he has a strong liberty interest in being free from mandatory detention.  Second, Quevedo Rivera's detention under § 1225 poses a high risk of erroneously depriving him of his rights because he has not been afforded the opportunity for a neutral decisionmaker to make an individualized determination about whether he poses a flight risk or a danger to the community.  Third, a bond hearing poses a minimal administrative burden to the Government.  That minimal burden is clearly outweighed by Quevedo Rivera's strong liberty interest and right to be heard.

## V.      CONCLUSION

Section 1226 applies to Quevedo Rivera's detention because he is not actively seeking admission and has been living in the United States since 2024.  Therefore, his continued detention under § 1225 is unlawful.  As a result, the Court will grant his Petition.

An appropriate Order follows.


**BY THE COURT:**

_____
MARY KAY COSTELLO, J.

8